IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Brandon Willis, on behalf of           )
himself and all others                 )
similarly situated,                    )
                                       )
            Plaintiff,                 )
                                       )
                                       )
      v.                               ) No. 21 C 1716
                                       )
                                       )
Universal Intermodal Services,         )
Inc., et al.,                          )
                                       )
            Defendants.                )
                                       )

Memorandum Opinion and Order

Brandon Willis's employer, a trucking services company called Universal Intermodal Services (defendant "Intermodal"), used a fingerprint scanner to track Willis's time and attendance at the Harvey, Illinois facility where he worked. Intermodal is one of several wholly-owned subsidiaries of an entity called Universal Logistics Holdings, Inc. (defendant "Logistics"). Willis filed this action on behalf of himself and other individuals at the Harvey facility and at other Illinois facilities where Logistics or one of its subsidiaries or affiliates operated, claiming that these entities violated their rights under the Illinois Biometric Privacy Act, 740 ILCS 14/1, et seq. ("BIPA"). Plaintiff also names as defendants entities called HR-1 LLC ("HR-1"), Universal

Management Services, Inc. ("Management"), and Data System Services LLC ("DSS"), and he claims that all defendants are liable for collecting, storing, and disseminating his and the putative class members' biometric identifiers and biometric information[1] without complying with the BIPA's strict data protection, disclosure, and release requirements.

The Amended Complaint (to which I refer simply as the "complaint") was filed on August 29, 2023.[2] Plaintiff alleges—and graphically depicts—a web of relationships between and among the defendant entities, which he groups into two broad categories: 1) "Administrative Entities," encompassing Logistics and its wholly-owned subsidiary Management, as well as affiliated entities HR-1 and DSS, which share ownership with Logistics and provide

---

[1] The statute defines "biometric identifier" as a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. 740 ILCS 14/10. "Biometric information" is "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. For ease of exposition, I sometimes use the term "biometrics" to refer generally to these types of data.
[2] The original complaint, which named only Intermodal as a defendant, was filed on March 30, 2021, but proceedings were stayed for over a year pending the Supreme Court of Illinois' decisions in two cases expected to impact the scope of plaintiff's claims: *Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918, 929 (Ill. 2023), *as modified on denial of reh'g* (July 18, 2023) (concerning BIPA claim accrual), and *Tims v. Black Horse Carriers, Inc.*, 216 N.E.3d 845, 854 (Ill. 2023) (concerning the statute of limitations for BIPA claims). After the stay was lifted, Willis filed the Amended Complaint, which add the other defendants.

2

administrative services to Logistics and its subsidiaries; and 2) "Illinois Facilities," defined as "several facilities in Illinois" that are "own[ed] and operate[ed]" by [Logistics] including [Intermodal]'s facility in Harvey, Illinois." Am. Compl., ECF 98 at ¶¶ 7-8. The complaint alleges that Logistics owns and operates, directly or through its subsidiaries, additional Illinois Facilities, including in Chillicothe, Goodfield, Mossville, and Peoria, Illinois. *Id*. at ¶ 28.

The Amended Complaint proposed a class defined as:

> All persons in the United States who used a biometric timeclock or other biometric device at any of the Illinois facilities of Universal Logistics or its subsidiaries, at any time from March 30, 2016 to the present.

Am. Compl., ECF 98 at ¶ 171.

In his pending motion for class certification, plaintiff argues that facts revealed in discovery warrant amendment to this class definition. He now seeks to certify "a class and a subclass that reflect Defendants' organizational structure." Mot., ECF 271 at 1. Plaintiff proposes an "Administrative Class" comprising:

> All persons who used a biometric timeclock or other biometric device at any time from March 30, 2016, to the present, at any location in Illinois at which Universal Logistics Holdings, Inc., or its subsidiaries conduct or conducted operations.

He also proposes an "Intermodal Class" comprising:

> All persons who used a biometric timeclock or other biometric device at any time from March 30, 2016, to the present, at any location in Illinois at which Universal

3

Intermodal Services, Inc. conducts or conducted operations.

Mot., ECF 271, at 1. For the reasons explained below, the motion is granted.

I.

The parties' submissions open with a threshold dispute over whether I should permit plaintiff to seek certification of a class different from the one asserted in the Amended Complaint. In connection with this dispute, each side accuses the other of strategic maneuvering and discovery misconduct designed to manipulate the scope of the class. Their quarrel centers on whether the class should be limited to employees of "Illinois Facilities" as the complaint defines that term or should instead include all individuals whose fingerprints were scanned at any Illinois location where Logistics or its subsidiaries operated. Plaintiff submits that the latter definition is appropriate in light of evidence produced in discovery, which revealed that most of the individuals whose biometrics were collected in Illinois using equipment that Logistics or one of its subsidiaries or agents purchased, owned, and operated were employed either by LINC—a wholly-owned Logistics subsidiary that is *not* named as a defendant— or by a third-party staffing agency, and were assigned by LINC to work at facilities that were owned and operated by Caterpillar—a company unrelated to Logistics or its subsidiaries.

4

In defendants' view, however, this definition would improperly expand the class beyond what it reasonably expected based on the complaint and the parties' subsequent exchanges. Defendants argue that the definition of "Illinois Facilities" as comprising facilities "owned and operated" by Logistics and its subsidiaries, coupled with the complaint's frequent reference to "employees of" or individuals "employed by" the Illinois Facilities, suggests that only employees of Intermodal and LINC fall within the class defined in the complaint. Resp., ECF 282 at 16. Defendants insist that because they have "proceeded under the good faith belief that the class was intended to include 'employees' who worked at any Illinois facilities where either [Intermodal] or LINC had operations (even if the facility was not technically "owned and operated" by the entity)," and "have proceeded throughout discovery as though employees at any [Intermodal] or LINC facility in Illinois were part of the purported class," they would be prejudiced by expanding the class to include temporary workers.

Plaintiff rejects this argument, noting that the original class broadly included "all persons" who "used" a biometric device at any of the Illinois facilities. Plaintiff also takes a dim view of defendants' professed surprise that plaintiff seeks to include temporary workers in the class, noting that his early interrogatories sought information not only about defendants'

5

"employees" but also about "Personnel, *including temporary workers or independent contractors*, that worked at each of the Illinois Facilities...." Logistics' 05/21/2024 Interrog. Answers, ECF 271-7 at ¶ 1 (emphasis added). By plaintiff's lights, the classes he now proposes do not change his theory of the case but merely reflect that the "persons" who "used" biometric devices owned and operated by Logistics or its subsidiaries included temporary employees of a staffing agency.[3]

At this juncture, it is helpful to review the nature of plaintiff's claims and each defendant's alleged role in the violations he asserts. The BIPA was enacted "to help regulate 'the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.'" *Rosenbach v. Six Flags Ent. Corp.,* 129 N.E.3d 1197, 1203 (Ill. 2019) (quoting 740 ILCS § 5(g)). Plaintiff asserts violations of Sections 15(a), (b), (d), and (e) of the statute against all defendants.

Section 15(a) requires private entities in possession of biometric identifiers or biometric information to develop publicly available, written policies establishing a retention schedule and

---

[3] For context, the class plaintiff seeks to certify contains approximately 2,800 individuals, which is roughly double the size of the class defendants say they expected. *See* Resp., ECF 282 at 16, 18 (asserting that a class containing Intermodal and LINC employees at Illinois facilities contains about 1,400 members, while a class that also includes temporary workers at Illinois facilities contains about 2,800 members).

6

destruction guidelines for such data. 740 ILCS § 15(a). Section 15(b) prohibits a private entity from collecting or obtaining an individual's biometrics unless it first informs the person in writing that biometrics are being collected or stored and the purpose and length of time of the collection, storage, and use of the biometrics; the entity must also receive a written release executed by the person whose biometrics it collects, stores, or uses. *Tapia-Rendon v. United Tape & Finishing Co.,* No. 21 C 3400, 2023 WL 5228178, at *1 (N.D. Ill. Aug. 15, 2023); 740 ILCS § 15(b)(1)-(3). Section 15(d) establishes limitations on when private entities can disclose or disseminate a person's biometrics. 740 ILCS § 15(d). And Section 15(e) establishes data protection standards that private entities must follow to protect biometrics in their possession from disclosure. 740 ILCS § 15(e).

While complaints in federal court need not identify legal theories at all, *see*, e.g., *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir. 1992), plaintiff's complaint does so, alleging that certain defendants took actions that directly violated the BIPA; others are "vicariously liable," for the BIPA violations of others; and some may be both. For instance, the complaint alleges that the Administrative Entities "directed, controlled, and coordinated the use of Biometric Scanners for the collection, storage, and use of biometric identifiers and biometric information at some or all of the Illinois Facilities,"

7

Am. Compl., ECF 98 at ¶ 8, and also that the Administrative Entities "captured, collected, and stored biometric identifiers and biometric information of individuals at some or all of the Illinois Facilities using equipment at several locations in Illinois," id. at ¶ 68. In support of his vicarious or agency liability theories, plaintiff alleges, for example, that "HR-1's employees, representatives, and/or agents were acting at the control and direction of [Logistics]," id. at ¶ 140; and that Logistics "exercised control over the manners and methods by which [Management] and DSS provided information technology infrastructure and data hosting services and support relating to timekeeping and security systems using Biometric Scanners for [Logistics] and its subsidiaries." Id. at ¶ 145. In short, it is clear that plaintiff intends to pursue both direct and vicarious/agency theories of liability in this action.

Moreover, the complaint does not suggest that any defendant is liable in its capacity as "employer." While it is true that the complaint often references "employees," it also refers to the collection of fingerprints from "workers and other persons" at the Illinois facilities. A reasonable interpretation of the complaint is that plaintiff is suing Intermodal not because Intermodal was his employer, but because Intermodal is the entity that allegedly collected, stored, and/or transmitted his biometrics without complying with BIPA's procedural safeguards. In other words,

8

Intermodal's liability to plaintiff, if any, does not flow from its capacity as plaintiff's employer but from the actions it allegedly took in violation of BIPA. Similarly, absent class members have claims against whichever entity collected, stored, transmitted, etc., their biometrics, regardless of whether that entity was also their employer. Defendants acknowledge that Logistics subsidiaries Intermodal and LINC own the finger scanners and other biometric devices at issue in this case. Resp., ECF 282 at 9; Hypes Decl., ECF 282-1 at ¶ 14. Defendants further admit "that at least 1400 unique individuals used Morpho Biometric Scanners at facilities operated by [Logistics] subsidiaries," ECF 286-2 at ¶ 51, and that "at least 1400 unique individuals used a biometric timeclock or other biometric device at a facility in Illinois that is owned by a subsidiary of [Logistics] from March 30, 2016 to the present." *Id*. at ¶ 52. Obviously, whether the class contains 1,400 or 2,800 members is significant to defendants, who would rather their class damages exposure be $1.4 million (or $7 million for reckless or intentional violations) rather than $2.8 million (or $14 million)—but the difference is one of degree, not of kind. In short, I am not convinced that any defendant's liability for the alleged BIPA violations turns on whether an individual class member was employed by a defendant or by a third party.

9

Nor am I persuaded that defendants are unduly prejudiced by amending the class as plaintiff proposes. Unlike in *O'Connor v. Ford Motor Co.*, 657 F. Supp. 3d 1130 (N.D. Ill. 2023), the authority on which defendants chiefly rely for this argument, plaintiff's proposed definition does not require amendment of the complaint or "substantial additional discovery, including possible repeat depositions of several witnesses." *Id*. at 1135.

Ultimately, "the obligation to define the class falls on the judge's shoulders," and the class definition need not mirror the one articulated in the complaint. *See Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (class definitions "can and often should be refined"). I conclude that defendants' proposed restriction of the class to "employees" of Logistics and its subsidiaries is at odds with the spirit of plaintiff's claims. And while it may be consistent with the literal terms of complaint, it fails to account for evidence of the roles that various entities played in handling the biometrics of individuals who worked at the Illinois facilities at issue or in establishing and implementing the policies governing the same.

## II. Rule 23

Federal Rule of Civil Procedure 23(a) establishes the prerequisites for the certification of any class: numerosity, commonality, typicality, and adequacy of representation. *See* Fed

10

R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). In addition, the proposed class must satisfy one of three types of actions set forth in Rule 23(b), *Svoboda v. Amazon.com Inc.,* 168 F.4th 956, 961 (7th Cir. 2026), and since plaintiff seeks certification pursuant to Rule 23(b)(3), he must also demonstrate that common issues predominate over any individual issues, and that a class action is superior to other methods for adjudicating his claims, *id*. Finally, the class must be "ascertainable," which means that it must be clearly defined based on objective criteria and must not be "fail-safe," meaning it may not be defined in terms of success on the merits. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015).

My Rule 23 analysis "should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811. Nevertheless, I "must make a preliminary inquiry into the merits" to the extent necessary to determine whether plaintiff has carried his burden of establishing the criteria required by Rule 23, *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

## 1. <u>Numerosity</u>

There is no dispute that the classes plaintiff proposes satisfies this requirement. Indeed, even the smaller, "Intermodal Class"—which defendants tacitly acknowledge is appropriate for certification—contains approximately 70 members. Defs.'s Resp.,

11

ECF 282 at 16. That is sufficiently numerous. *See Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement.").

### 2. Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (internal quotation marks and citation omitted). When the class's claims depend on a common contention that is capable of class-wide resolution, meaning that determining the truth or falsity of the contention will resolve an issue central to each class member's claim "in one stroke," commonality is satisfied. *Id*. Courts "routinely" find this element satisfied in BIPA cases. *Gaertner v. Commemorative Brands, Inc.*, No. 23-CV-02452-SPM, 2026 WL 248292, at *7 (S.D. Ill. Jan. 30, 2026) (citing cases). Here, plaintiff identifies the following common issues:

> (1) whether Defendants' biometric practices complied with BIPA's policy requirements; (2) whether Defendants obtained the required written releases before collecting Biometrics; (3) whether Defendants disclosed or disseminated Biometrics in violation of section 15(d); (4) whether Defendants established and adhered to a retention and destruction schedule; and (5) whether the Administrative Entities are liable for the operating subsidiaries' violations under agency principles based on their centralized decision-making.

Mot., ECF 271 at 17. Defendants contend that these issues are not common because they "will require entity-by-entity inquiries regarding who collected, possessed, disclosed, or safeguarded biometric data; what disclosures or releases were provided; and what security practices applied." Resp., ECF 282 at 26. But the relevant inquiry is not whether each defendant will have common liability *to the class*; the question is whether any defendant's liability turns on issues common *to class members. See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("[a]n individual question is one where "members of a proposed class will need to present evidence that varies from member to member."). Plaintiff has sufficiently identified several common issues.

### 3. Typicality

A plaintiff's claims are "typical" for purposes of Rule 23(a) if they "rest on the same legal theory and arise from the same event, practice, or course of conduct as the claims of the other class members." *Id.* 2026 WL 248292, at *8 (S.D. Ill. Jan. 30, 2026). Like the commonality requirement, "typicality is frequently established in BIPA class actions," *id.*, and this case is no exception. Indeed, defendants' one-paragraph argument disputing typicality merely repackages a portion of their adequacy argument and is unpersuasive for reasons discussed below.

13

4. Adequacy

The lion's share of defendants' opposition to class certification focuses on the requirement that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This criterion "is satisfied where the named representative (1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class." *Svoboda v. Amazon.com, Inc.*, No. 21 C 5336, 2024 WL 1363718, at *5 (N.D. Ill. Mar. 30, 2024), *reconsideration denied*, No. 21 C 5336, 2025 WL 2240408 (N.D. Ill. Jan. 6, 2025), and *aff'd*, 162 F.4th 821 (7th Cir. 2025), *amended on denial of reh'g sub nom. Svoboda v. Amazon.com*, 168 F.4th 1056 (7th Cir. 2026), and *aff'd*, 168 F. 4th 956 (7th Cir. 2026). Defendants argue that plaintiff cannot adequately represent members of the Administrative class for a variety of reasons. The first is that as a former employee of Intermodal, he is "uniquely situated as a member of both sub-classes" and possesses "a more direct and less complex path to recovery for alleged BIPA violations that does not require he establish agency of single enterprise" to recover damages. Resp. ECF 282 at 21-22. Even assuming that many absent class members lack a direct claim against the entity that "collected" their biometrics (which may be the case if that entity was LINC, which is not a defendant), they may still have direct

14

claims against at least DSS, who was alleged to have "possessed" their biometrics. And while defendants argue that plaintiff's theory of vicarious liability against the Administrative Entities is somehow different in kind than the claims of class members employed by entities other than Intermodal, I do not discern a material difference between these claims.

A closer question is whether plaintiff can adequately represent class members who signed class action waivers and BIPA consent forms that he did not sign. It is true, as defendants observe, that in some cases, courts have held that class representatives who did not sign waivers or consents could not adequately represent absent class members who did sign such waivers. *See, e.g., Gamble v. City View Multicare Ctr., LLC*, No. 23 C 3029, 2025 WL 4063606, at *4 (N.D. Ill. July 8, 2025); *Santangelo v. Comcast Corp.*, No. 15-CV-0293, 2017 WL 6039903, at *5 (N.D. Ill. Dec. 6, 2017). In this case, however, I am not persuaded that evidence of signed consents by some class members defeats class treatment.

First, there appears to be no dispute that a number of class members who signed consent forms did so *after* the first time their biometrics were collected. Setting aside any issues of the validity of the forms class members signed, the Seventh Circuit's recent holding in *Clay* that individuals are entitled to only "one recovery" for multiple biometric scans, *see* 171 F.4th at 985, means

15

that any class member who signed a consent form *after* his or her biometrics were collected is on the same footing as plaintiff. And the record does not reveal how many members of the Administrative Class—if any—signed consent forms *before* the first collection of their biometrics. Moreover, as plaintiff observes, defendants may rely on the consent forms not only to defeat the claims of those who signed them, but also to show their good-faith efforts to comply with BIPA and reduce their culpability. Because this defense may affect the damages claims of *all* class members, plaintiff has an incentive to challenge the forms even though he did not sign one. So even assuming that a consent defense that does not apply to plaintiff may apply to a slice of the Administrative Class, I am not convinced that plaintiff and those class members have "antagonistic or conflicting interests." *Sec'y of Lab. v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986).

For similar reasons, evidence that some class members signed class action waivers does not make plaintiff an inadequate representative. While defendants argue, without citation to evidence, that "most" or "some" of the putative class members signed class action waivers, I am not persuaded that this defense is likely to usurp or derail the litigation in a way that defeats plaintiff's adequacy as representative. Setting aside that defendants waited until *after* plaintiff had moved to certify the class to produce hundreds of documents they identified as class

16

action waivers, *see* Ripp. Decl., ECF 286-1 at ¶ 7, I am not convinced that these documents make plaintiff an inadequate class representative. For one thing, the adequacy analysis generally focuses on whether the *representative*—not absent class members—is subject to unique defenses that might distract him from the pursuit of shared issues. *See*, e.g., *Beaton v. SpeedyPC Software,* 907 F.3d 1018, 1027 (7th Cir. 2018) ("A representative might be inadequate if he is subject to a substantial defense unique to him."); *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer."). For another, defendants' suggestion that plaintiff may try to shrink the class in order to claim a greater portion of any potential settlement rests on unproven assumptions, and it does not persuade me that plaintiff and his counsel are unable or unwilling to advocate zealously for all class members.[4]

Finally, although defendants do not dispute that the proposed class action meets the predominance and superiority requirements of Rule 23(b)(3), I must independently assure myself that these criteria are met before granting certification. "Rule 23(b)(3)'s

---

[4] Defendants raise a handful of additional arguments, including that some class claims are time-barred and that others, against DSS, are barred as extraterritorial. These merits-heavy arguments do not persuade me that certification is improper.

17

predominance requirement is satisfied when common questions represent a significant aspect of a case and ... can be resolved for all members of a class in a single adjudication." *Messner*, 669 F.3d at 815 (internal quotation marks, alterations, and citation omitted). As discussed above, plaintiff challenges a uniform process of biometrics collection, transmission, and storage pursuant to common directives and using common technology. I am satisfied that the common liability issues plaintiff identifies will predominate over any individual issues, including whether any class members that they claim signed valid BIPA consents or class action waiver are entitled to recover.

The superiority element requires little discussion. "As the Seventh Circuit has explained, the class action device is a superior means of resolving disputes where, as here, any individual class member's recovery is likely to be small." *Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 788 (N.D. Ill. 2020) (citing *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014)) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (internal quotation mark omitted). Especially since the Seventh Circuit held in *Clay v. Union Pac. R.R. Co.*, 171 F.4th 975, 985 (7th Cir. 2026), that the 2024 amendment to the BIPA limiting individuals to "one recovery" is retroactive, the

18

value of individual class members' claims is small. A class action is the superior method of adjudicating these claims.

III.

For the foregoing reasons, plaintiff's motion to certify the two classes defined above is granted.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: June 24, 2026

19